The next case is Kushner v. New York City Department of Education. Yes, you may proceed. Thank you, Your Honor. Good morning. May it please the court. This is an appeal from a 12 v 6 dismissal. COVID-19 vaccine exemption case against the New York City Department of Education and granting the deal is motion to dismiss the district court made at least four clear legal errors. First, with respect to the plaintiff's religious objection to the vaccines, the district court construed the allegations against the plaintiffs against the plaintiff and made a factual finding that Kushner's quote true concerns and quote were actually medical or scientific in nature. Now, not only did this go against the basic rules on a 12 v 6 motion, but it goes against the clear development of the case law in this area. Plaintiff Kushner asserted an objection based on the body as a temple principle, which she articulated from a quote from Deuteronomy as you should be very careful to protect your life. Now the body is a temple principle has been litigated quite extensively in these cases, really all across the nation. And to date, the fifth, the sixth, seventh, and the eighth circuits have all recognized that the body is a temple principle does in fact articulate a religious objection, even though it is intertwined with medical or scientific concerns because the very. But her complaint doesn't say, I want no vaccines or I want no vaccines that were formulated using a certain technique. It simply says I, it says, I'm worried about the safety of this vaccine. And so it's not a resistance or reluctance to to have outside chemicals enter the body. It's a practical objection. It looks like based on the face of the complaint. It said, I think she says in the on the face of the complaint, I think more testing is necessary before I would agree to have this put in my body. How, how is that not? How is that fundamentally a religious objection as opposed to fundamentally a practical objection? Because as these other circuit courts have pointed out, the principle that it's being based on is the idea that you have an obligation to protect your body, that it's a God given vessel and that you have an obligation to ensure that's what coming into your body will not harm. It will not impurify it, that those are from God's commands. And so these issues, of course, are intertwined because the religious believer is evaluating what is going on in the real world as it interacts with his or her own belief. And in this particular case with his or her own body. But what the 7th and the 8th circuits in particular have pointed out, following the guidance from the EEOC, that where where religious and non-religious issues are intertwined, that doesn't remove a person's religious belief from the protection of Title VII. Some of the cases have, do you have the Sixth Circuit case, I think that the pleading was that the plaintiff said that she couldn't take a vaccine after praying about it, given the religious duty to protect the body as a temple, but she prayed. Your client's complaint is about as sparse as it could get, right? And it is completely and inextricably intertwined with her evaluation of the safety and scientific principles at stake. That doesn't make any difference, you think, under these other circuit case law? Well, I think the practical difference that it does make really goes to the second legal error in this case, which is the argument that the plaintiff really didn't sufficiently and fully articulate her religious objection. Well, that can be something which can be addressed through an amended complaint. So the issue here, and I think there's two issues that are intertwined here. One is, is there a religious objection? And that can clearly be addressed through an amended complaint if the argument is this isn't fleshed out enough. My plaintiff, remember, the employee in this case is not a lawyer, is not a theologian. This was at the very beginning of the litigation wave over these cases, and a lot of plaintiffs did not understand how full perhaps they should be putting into their initial accommodation request because these are things were going to be scrutinized by courts. Well, let's talk about the complaint, though, which is written by a lawyer, right? And so here, I think the request to amend the complaint is sort of a footnote in the response to the motion to dismiss. At least when I was in the trial court, right, we required a motion to amend with a proposed amended complaint. Show me what it is you're going to do that would improve the chances of this claim surviving a 12B motion. And even on appeal, there's sort of a vague representation in the appeal briefs about what would be done. She would buttress her arguments. But how was that enough? Because I hear you saying even if this was dismissed, it should have been allowed to be amended. It's the kind of thing that could have been bulked up. Doesn't the plaintiff have an obligation before the trial court to offer some proffer of what would be bulked up and what would be offered that would make the proposed amended complaint? A procedural obligation? No. It's very common in motion to dismiss briefing for the plaintiff in the opposition to indicate if there's a lack of sufficiency here, please give us leave to amend. So that's very commonplace in practice. Why are you saying it's common? You're saying that that is also in compliance with the local rules for the district court of how you move to amend? It's not precluded by the rules, yes. The plaintiff is not barred because there hasn't been a failure to file a formal motion. That is correct. So we have that error here. There is the issue here whether this is a religious-based complaint or is it the sincerity of your client in making this claim. It seems to me you have to have a religious-based complaint and then you get to the question, well, is it sincerely held? And there is a – this is a very broad – this particular belief that we're talking about here, the temple principle, is sort of a broad cover for lots of what would be non-religious aspects to this situation. And, I mean, it really depends. Certain circuits, it seems to me, have different views about this question. We tend to be on the more sort of pro-plaintiff side in many of our questions. But this is very different from claiming that you want an exemption because the stem cells are – were obtained illegal – in violation of religious norms. And I – that's what I'm sort of wrestling with here. It seems to me that if – the very broad view that you're asking is, well, if she says it's a religious belief and she cites Deuteronomy, that's enough. And that's – that seems to be – even though the reasons that support her position are basically – could be addressed, could be thought of as non-religious. In other words, not enough testing. Well, Your Honor, I think that your points are well taken, but I think in this context that's really not the analysis. We're talking about pleading. We're talking about the issue of whether someone has alleged that there is a religious objection. The issue of sincerity, the issue of credibility, that's something which, of course, can be tested during the course of litigation. And if appropriate, that's something that can be addressed on summary judgment. But in this case, the district court did not make any argument about sincerity. The district court blatantly characterized the plaintiff's objection as non-religious in nature without even giving her an opportunity to articulate it more fully. I suspect, however, that in this particular case, because of the intertwined nature of the religious principle and the medical and scientific arguments, that the judge is going to say, isn't this really a medical or scientific argument? And I think that the other circuit courts that have addressed this issue have explained that, yes, they are intertwined. But the nature of the religious beliefs, the nature of the religious objection, requires it to – it implicates a medical issue. You're saying that it's not for us on the basis of the pleadings to reach – to decide that question. Correct. I see that my time is – Before you sit down, though, could you briefly address the undue hardship point? Because the district court had two bases for dismissing. Yes. And it does seem to me, you know, it's my understanding from the complaint that your client wanted to teach in person without testing. And it does seem that that would be an undue hardship in the fall of 2021. What's wrong with the district court's conclusion as to that? Well, the plaintiff did not say that she wanted to teach in person without testing. It was unvaccinated. I'm sorry, unvaccinated. So the issue on the undue hardship is whether an unvaccinated employee, in this case a teacher, presents a substantial – following appropriate precautions, which can include testing, masking, distancing, all the various precautions that have been previously in place. And, in fact, for the month or so before Ms. Kushner was put on leave, she had to follow those as well. So the issue scientifically, if you will, is does an unvaccinated employee following those appropriate safety precautions present a substantial risk relative to a vaccinated employee who's not following these precautions because they're not required to? And what we know is from a scientific perspective, in the fall of 2021, the answer to that question is at least arguably no. An unvaccinated employee following safety precautions would not have posed any substantial risk relative to vaccinated employees not following the safety precautions. And so that really is a factual question. And I think the idea that an unvaccinated employee is simply inherently an undue risk, it doesn't comport with the science. It doesn't comport with the reality. We know lots of workplaces that have allowed unvaccinated employees. We know lots of school districts that allowed unvaccinated employees. So this really is a fact question, and the burden is on the department to prove that it's an undue burden. Now, if I may, what we know from discovery in this case, because there were two plaintiffs, and so I was able to continue discovery with Plaintiff Bikert. And what we learned was that the Department of Education looked at the exemption requests and screened them initially at a very minimal level. They just wanted to see if someone basically pressed the right box, because it was all done online. If they said it was a religious exemption, did the information that they submit look like it was religious in nature? And here we know that they saw that Ms. Kushner properly requested a religious objection because they denied her on the religious objection form. But what we also know is that the Department of Education made a predetermined policy to deny every single religious exemption, regardless of the employee who submitted it, regardless of the breadth and volume of their explanation for why they objected to the vaccine. All 3,500 or so were all initially denied just as a matter of policy. So there was no interactive process. There was no effort to determine sincerity. There was no effort to determine if a particular employee could be accommodated. They just made a predetermination. Now, certainly the Department of Education has the right to decide that vaccination is an appropriate policy, but under Title VII, as well as the other city and state laws that apply here, they don't have the right to just make a blanket determination that we're just simply not going to grant any accommodations. And that's what happened here. Thank you. We'll hear from your adversary.  Good morning. Rebecca Vizqueda for the New York City Department of Education. May it please the court. The plaintiff here did not plausibly allege that she had notified DOE that she had a bona fide religious conflict with the COVID-19 vaccination requirement. As your honors were recognizing, the statement that she put in her exemption request to the Department of Education was about as sparse as it could get. I'm sorry, could you pull the microphones a little closer to you? If they come over, that's better. Try and speak into them. Thank you. As this court was recognizing, the exemption request that the plaintiff here submitted was about as sparse as it could get. She referenced that she said that she observes the Jewish faith, but did not actually describe her personal religious beliefs at all. She went on to say it is taught that she should be careful to keep her body safe, citing this single verse from Deuteronomy. Couldn't that be corrected by an amended complaint? She's referring to Deuteronomy. She's referring to a religious tenet. And she's saying that on that basis, she should be exempt. Now, for her to make the next step is that she sincerely believes she should be exempt because of that. That can be articulated in a second complaint, right? Well, as your honors were recognizing, she has never said what she would put in an amended complaint. Well, let me stop you before you go further. I think we may be on two different topics. We've been talking about with your opposing counsel the complaint filed in district court. You seem to be making an argument that this wasn't discriminatory because the articulation of the religious basis for the objection was unclear. That's correct, your honor. So would she have had an opportunity to – is this where the interactive process allegation comes in that they should have said we're unclear on what you mean? She was offered an interactive process, and she chose not to take advantage of it. She did not appeal to the citywide panel, which had been put in place by the time she was ultimately terminated from her employment. And this court, in the many other cases that it has heard addressing the COVID-19 vaccination requirement for city employees, has recognized the citywide panel, is well aware of the contours of that. And for whatever reason, this plaintiff chose not to avail herself of that opportunity to receive a fresh look at her request and provide additional information to a panel that would evaluate whether indeed she did have a religious basis to object to a vaccination requirement. Do you think because of that she's waived her claim? Was that a prerequisite? I don't think that it is a legal prerequisite just because this is an unusual situation that has not come up before, and there is not precedent for that specifically. However, I think it is a relevant fact to keep in mind, and certainly it's something that distinguishes this case from the other cases that plaintiff refers to that have been decided by other circuits. In those cases, in many of them, the circuit courts specifically cited the additional information that plaintiffs had provided during appeals processes with their employers. And they, in those processes, elaborated on their beliefs and gave personal accounts of their beliefs, and not just citing one isolated verse from an unknown translation that, as Your Honor suggested, could potentially be used as cover for any number of personal or philosophical beliefs. The plaintiffs in those cases gave specific details about- The problem is that this Temple principle does permit that. And it's been recognized and accepted by courts that there is an intertwining of both secular and non-secular.  Absolutely. It is a broad belief, and I think that what is the difference here is that the plaintiffs in cases where courts have found that plaintiffs have laid out a religious basis for their objection, they have done more to actually explain that belief and say what it is. Here, first of all, the plaintiff didn't actually use that language, did not actually say that she believes her body is a temple of God. That is something that many plaintiffs have said. That's not exactly the verse that she's referring to, and not exactly her terminology. I think that she is finding that it is to her benefit now to tie her wagon to that. So it's a question of semantics. I don't think necessarily semantics. I think that the cases where circuits have ruled in favor of plaintiffs who have articulated that belief, those plaintiffs have explained that they specifically- I think that that's what is fundamentally missing here is that there is no personal account whatsoever. This is a case where a plaintiff has simply said that she observes a religion and that that should be enough. And I think that while this is- You mean, she says she observes a religion, but are you trying to draw a distinction between that and what her actual personal beliefs are? Yes, I think so. How can we get into that? I mean, how can you avoid discovery under those circumstances? First of all, I mean, you know, the general- we've had a lot of these cases, at least I haven't in this particular context, but mainly it's a question of the vaccine itself and the source of the vaccine, the actual source of developing the vaccine. But once you're in a question of whether the beliefs were sincerely held, it seems to me that that- I don't see how that can be decided on the basis of a complaint. I think that while there's certainly- certainly there's a low bar at this stage, but I think there still has to be some standard. The alternative is that employers have a duty to- a potential duty to accommodate anyone who references any religion, anyone who says the word religion in any sort of request. And while perhaps in most circumstances an employer could go back and say you need to explain this more and there might be room for more of a process, in a situation like this where there's- Why should the balance be tipped in favor of the state on this kind of a question when it's a religious concern? She's saying it's a religious concern that she has. And the state is saying, well, it's not religious enough. You know, and we're supposed to decide whether it is or not at court. I mean, you know, it puts us in a pretty awkward position, it seems to me. I recognize that it is a difficult position for courts and for employers to be in in determining what is actually religious and what is not. But I believe that there needs to be some minimal standard at least. And here the plaintiff simply did not allege anything that would meet even a very low bar for showing that she had a bona fide religious objection. Well, on the question of the undue hardship, I was struck by the fact that exactly what she says she would do was all that was required when COVID was at its worst, before we had vaccines. Right. And somehow now that there's a vaccine, that's not enough. And I'm not sure what happened. Did COVID change and get worse? I don't think so. I thought it was worse before. And therefore, just looking at it from a common sense perspective, why were the steps that were sufficient before the vaccine sufficient afterwards? Well, a key fact there that DOE explained in its position statement that was incorporated by reference was that in the previous school year, there had not been a full return to in-person education. Many students were still at home under a hybrid model. So there were lower numbers of students and staff in the building. That's true because everybody was scared. But what we're talking now about is what the schools required for work. And they didn't require, there was no vaccine, so that wasn't part of the picture. Right. But they did have protocols in place that were considered to be fairly safe. And I think at that point, and this is maybe outside the record, there was a quite real question initially as to whether the vaccine was mitigating the problem or a 100% secure preventative. And it never really was. So it's a question of degree. But if her religious beliefs are such, as she is arguing, and I'm not saying that they are because there has been no discovery, that's not a question of degree. That's a certainty. And then we go to the undue hardship question. How did it become an undue hardship after the vaccine was developed? I know a lot of cases have said that. And I was on We the People, so I'm familiar with that holding. But it's not clear to me that this isn't an undue hardship. Well, I think as Your Honor recognized, the circumstances had changed. In the prior school year, there were fewer students, fewer staff in the building, and they were doing the best that they could under the circumstances. However, and I admit I'm not sure how much of this is in the record, but since we have all been talking about the facts on the ground a bit, that there were regular classroom closures and school closures where they had to then shut down because of quarantines that were recommended. And it was a huge disruption for education of young students at the time, that in order to keep them safe, they— You're making a further argument here, I believe, that because these are special needs kids, that they need to have a person. You can't just do it remotely. The person needs to be in the classroom. Or somebody needs to be in the classroom. Because these are young kids and they need to be controlled as well as taught, I guess, is part of it. Yes, that's certainly an additional aspect here. But I think that even in general, I think that it is essentially indisputable that children were able to receive a better education in person than in remote teaching models that were being used across the country in the previous year. They were getting—there was some personal education occurring prior to the vaccine, correct? Yes, there was some. Even in special ed situations? There was some. But yes, as I was saying, there were regular 14-day closures of classrooms where then they had to return home until everyone could test negative and then return back. And regular disruptions throughout the school year. So we shouldn't take from the fact that there were conditions that the school employed the year prior that were employed by DOE, that that means by definition there was no undue hardship if she's seeking to work under those same conditions in the following year? Right. I think that the prior year was an extreme hardship for students and educators, regardless of the reason, I think just because of the pandemic itself at that point. So it would have been an undue hardship for DOE to have to continue operating under that regime when there was now a vaccine available that could allow students and teachers to return more safely and hopefully reduce those disruptions. Thank you. We'll hear rebuttal. Thank you, Your Honor. Three quick points. The first point is to remember that we're dealing with religion here. And as Justice Scalia emphasized in the Abercrombie case, religion is given preferential treatment under our scheme under Title VII and under the law. It's not the equivalent of other protected categories. And so that's the baseline that we have to deal with here. The second point is we've talked a lot about factual issues this morning, and it's really not appropriate to be getting into all these factual issues on a motion to dismiss. And I think that's what the district court did, relying on different case law, and that's what the defendant is doing, relying on this position statement. Position statement is just argument. It's not evidence. If we're going to get into these factual issues and how a teacher like Ms. Kushner could have been accommodated, those need to be developed in discovery and addressed at summary judgment. And the third point I would make is that in the other cases that we're talking about here, the employers really did interact with the employees. They just didn't send an initial, you didn't meet the requirements for religious accommodation, denied. That's what happened here. The citywide panel was not part of the DOE. It's not part of the interactive process. It was developed months later after the original arbitration scheme was overturned by this court, recognized that it would have been overturned by this court in the Cain decision. And that wasn't an opportunity where the DOE went to the employees and, for example, gave them questionnaires, which a lot of employers did. The New York State court system, for example, would respond to people's requests for religious exemptions with various questionnaires trying to get more information about the basis for their objections. DOE did nothing like that here. They just looked initially whether something was a medical request or a religious request. If it was a religious request and there's no indication they didn't understand that to be the case here, it was automatically denied. End of story. No process whatsoever. So Ms. Kushner didn't even have an opportunity to understand why they didn't think what she said was adequate or to give more explanation if they really wanted her to go into that. But we certainly can do that in an amended complaint. Now, the vaccination is no longer required currently, right? In the city of New York, it is not, correct. So she is basically claiming that she was terminated without pay for a limited period of time. And those are the damages that you're seeking. Well, she's still not working for the New York City Department of Education. She's working elsewhere? At this time, I'm not sure.  I'm not sure. But she could be working without a problem, right, because the vaccine wouldn't be required. Well, technically it's not required. That's correct. As far as I know, that would be the case, yes. I just seem to assume that we were talking about a limited period here. But I might be wrong on that. Thank you very much, Your Honor. We'll take the matter under advisement. Thank you both.